57 So.2d 443 (1952)
GUESS et al.
v.
AZAR et al.
Supreme Court of Florida, Division A.
March 11, 1952.
Clyde H. Wilson, Sarasota, for appellants.
Thomas W. Butler, Sarasota, for appellees.
THOMAS, Justice.
The appellants have posed two questions, one involving their right of passage to and from their "hemmed in" lands, secured to them by Sec. 704.01, Florida Statutes 1949, and F.S.A., and the other challenging the court's ruling excluding testimony, offered in defense of a citation for contempt, that the lands traversed in passing between their lands and a highway were not in fact owned by the appellee, Azar.
The appellees filed a suit to enjoin appellants from using a certain road across appellants' lands and were awarded a decree, 2 June 1950. Later, upon a representation that Cleveland Guess had violated the court's order, a rule directed him to show cause why he should not be held in contempt of court. He was adjudged guilty and was ordered to replace the barrier that had been put across the road he was prohibited from using, and upon failure to do so within thirty days, was to spend thirty days in jail.
Had the order stopped there we could simply rule that the appellant should have obeyed the injunction regardless of his idea of its propriety, but inasmuch as the chancellor seems to have incorporated provisions revising the original decree we consider it regular, fair, and just to all parties to rule on the underlying principles and to dispose of the litigation for once and all.
The plaintiffs, now appellees, own land bounded on one side by the Gulf of Mexico and on the other by Sarasota Bay; the *444 appellants have homes on property situated south of appellees' lands. Inasmuch as the lands of appellees lie between those of appellants and the public road, the appellants do not have egress or ingress except along the foreshore or across the lands of the appellees.
In the bill of complaint it was alleged that the defendants were engaged in the business of excavating shell and hauling it across the plaintiffs' lands. An attempt to stop the activity by erecting barriers had been made, but the defendants promptly removed the obstacles and continued the hauling. It was charged that there was a much shorter route from defendants' property to a public road than the one they persisted in using.
After an exhaustive hearing the decree we mentioned at the outset was entered. Let us now have a look at it.
The defendants were permanently restrained from using the road in question "* * * for any purpose, and * * * [were] further permanently * * * restrained from using any part of plaintiff's lands for any right of way * * *." The only exception was that the decree should "* * * not apply to any of the foreshore that adjoins the lands * * *, that is to say the beach proper on the Gulf of Mexico which lies between the high and low water marks."
Pausing here to analyze the situation, we find that the defendants were relegated to use of the foreshore, which, from its very nature, they had a right to traverse anyway, without the aid of the provision. So, in effect, the injunction was an absolute prohibition against traversal of plaintiffs' property for any purpose whatever.
When the order adjudging the defendant, Cleveland Guess, in contempt was entered, the chancellor added language that constituted a modification as well as an elaboration of the original injunctive decree. He then found that in view of the provisions in Section 704.01, Florida Statutes 1949, and F.S.A., the defendants had "* * * a right to a way of ingress and egress over the lands involved * * * for the purpose of home, agricultural and stock raising, but for no other purposes * * *." Stating it in the negative, he added that the purposes named should "* * * not be construed to permit the use of a way across the land for transporting or hauling shell for commercial purposes * * *, and the use * * * for any purpose * * *" other than those designated would be considered a violation of the injunction. Italics supplied.
We see now that although the defendants were at first confined to the foreshore for all passage, regardless of its nature, the rigid restriction had been relaxed to allow them to cross plaintiffs' land for three purposes, but to remove the shell they were marketing, they were still required to resort to the beach.
We think the appellant, Cleveland Guess, had no right whatever to defy the court's order and do not wish therefore to disturb the adjudication of this point; also, we are of the opinion that the predominant issue was properly decided.
While the foreshore could not serve fully as a route of ingress and egress because of its very nature, being the land between high and low water, as the court described it, and its use, therefore, would depend on the vagaries of the tide, nevertheless, the court was correct in confining the removal of shell to that route.
To secure a way of necessity there must be unity of title from some source other than the State. Dudley v. Meggs, 54 Okla. 65, 153 P. 1121. It was alleged in the bill that no unity of title appeared in the histories of the titles to the lands owned by appellants and appellees and this averment was admitted in the answer. In Jones on Easements, page 247, we find the reason for the rule that where the state is the common source of title the right to a way of necessity does not arise. It is said there that "By public statutes she provides for the establishment and maintenance of public roads, penetrating every neighborhood and sufficiently numerous to meet the general wants of her citizens. * * * It would be ruinous to establish the precedent contended for, since by it every grantee from the earliest history of the State, *445 and those who succeed to his title, would have an implied right of way over all surrounding and adjacent lands held under junior grants, even to the utmost limits of the State."
The right to a way of necessity is founded on an implied grant, but no such implication arises from conveyances by the State.
Apparently, the only relaxation of this rule ever attempted by the State was the passage of Sec. 704.01, supra. Whether the titles in the instant case originated after the passage of that law is not disclosed in the record before us. When the section is read with the two succeeding sections, which were parts of the original act, it is very difficult to understand. But its only conceivable purpose was to create an exception in cases where the isolated land was put to the uses described in the act, the common source of title having been the State.
In this situation it appears to us the chancellor could have done no more than permit the appellants to cross the appellees' lands only for reaching their homes or for transportation in connection with agriculture or stock raising. The foreshore was available to the public so the appellants could haul shell over it even without the aid of the court's order, but, to repeat, no authority existed for doing that across appellees' property in view of the general rule and the narrow legislative exception. This condition would continue until the opening by the county of a public road to the lands of appellants, in which case the appellees would be compensated for the property taken.
We think the chancellor was eminently correct in rejecting the testimony of ownership, so we do not disturb that ruling.
No attack has been made on the constitutionality of the Sec. 704.01, supra, and of course, we make no commitment on its legality.
The decree is
Affirmed.
SEBRING, C.J., and TERRELL and HOBSON, JJ., concur.