Electronically Filed
Intermediate Court of Appeals
30509
05-MAY-2014
08:07 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

THE MALULANI GROUP, LIMITED fka MAGOON BROTHERS, LTD.,
a Hawaii corporation, Plaintiff-Appellant,
v.
KAUPO RANCH, LTD., a Hawaii corporation; HEIRS AND/OR DEVISEES OF
HAMOLE AKA MARIA HAMOLE; HEIRS AND/OR DEVISEES OF KALEIMOMI
PIIMAUNA AKA ROBERT KALEIMOMI PIIMAUNA; HEIRS AND/OR DEVISEES OF
KAWAI AKAHI; HEIRS AND/OR DEVISEES OF IPOALOHA KALALANI AKA IPO
KEKIWI; HEIRS AND/OR DEVISEES OR BENJAMIN KEKIWI AKA BENJAMIN
KAHALE KEKIWI; SAM K. KAAWA AKA SAMSON K. KAAWA; MAUREEN LISA
BULLER; JEFFREY LOU BULLER; JEROME PIIMAUNA; JEFFREY NOHUA
PIIMAUNA; ANDREW PIIMAUNA; HEIRS AND/OR DEVISEES OF JOSEPH N.
PIIMAUNA, JR., AKA JOSEPH NAHALE PIIMAUNA, JR.; WALTER HIU, JR.;
BEATRICE KAHUILA CHERRY; PATRICK KAHUILA; YOLANDA Y. MATA AKA
YOLANDA Y. HAUKI; EDWINA L. HIU; CLARENCE K. T. HIU; NANCY MISAO
KAHUILA BOND AKA NANCY M. MCDANIEL; LINDA A. CLARK; HEIRS AND/OR
DEVISEES OF ABEL WAILANI HAI; HEIRS AND/OR DEVISEES OF ADAM SCOTT
HAI, SR.; AGNES KANALULU SMITH; HEIRS AND/OR DEVISEES OF JOHN E.
KAMAI; HEIRS AND/OR DEVISEES OF PALAONEA; HEIRS AND/OR DEVISEES
OF JOSHUA AHULII; LUCINDA PUPUHI; HEIRS AND/OR DEVISEES OF
KAMAKALOHI; HEIRS AND/OR DEVISEES OF PUPUHI; HEIRS AND/OR
DEVISEES OF HOLI; HEIRS AND/OR DEVISEES OF A. KAWEA AKA ANE KAWEA
and as ANE KAULAINAMOKU; HEIRS AND/OR DEVISEES OF WAHINEAEA
and JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100;
DOE CORPORATIONS 1-100; DOE ENTITIES 1-100 and
DOE GOVERNMENTAL UNITS 1-100, Defendants-Appellees.

NO. 30509

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 08-1-0501(3))

MAY 5, 2014

FUJISE, PRESIDING JUDGE, LEONARD and GINOZA, JJ.

<u>OPINION OF THE COURT BY GINOZA, J.</u>

Plaintiff-Appellant The Malulani Group, Limited, fka Magoon Brothers, Ltd., (Malulani) filed this declaratory action alleging that it owns property in Kaupo, Hana, Maui (Malulani Parcel) and seeking to establish implied access and utility easements across adjacent property (Kaupo Parcel) in which Defendant-Appellee Kaupo Ranch, Ltd. (Kaupo Ranch) has an interest. Malulani's First Amended Complaint asserts three claims: (1) an access easement implied by necessity; (2) an access easement implied by prior use; and (3) a utilities easement as part of an access easement.

The Circuit Court of the Second Circuit (circuit court)[1] granted summary judgment for Kaupo Ranch on all of Malulani's claims and granted costs to Kaupo Ranch. On April 16, 2010, the circuit court entered a Final Judgment and Decree (Final Judgment) against Malulani, from which Malulani appeals.

For the reasons discussed below, we vacate the Final Judgment entered by the circuit court and remand for further proceedings.

I. **Background**

The Malulani Parcel consists of approximately 20.2 acres that Malulani asserts is wholly surrounded and landlocked by the Kaupo Parcel, which in turn consists of approximately 118 acres. Malulani further contends that records in the Bureau of Conveyances contain no access or utilities easements between the Malulani Parcel and the closest government road, Pi'ilani Highway. However, Malulani asserts that the Malulani Parcel and the Kaupo Parcel were initially owned by the Kingdom of Hawai'i, that each parcel was conveyed by respective land grants in the 1850s, and that a continuous and apparent easement for access between the Malulani Parcel and Pi'ilani Highway exists over the Kaupo Parcel. Malulani thus claims an implied easement over the Kaupo Parcel in favor of the Malulani Parcel for access to

---

[1] The Honorable Joseph E. Cardoza presided.

2

Pi'ilani Highway. Malulani further claims that such an easement creates a general right-of-way for all reasonable purposes, including utility easements.

The circuit court resolved all of Malulani's claims by granting summary judgment for Kaupo Ranch. The primary basis for the circuit court's ruling was that the Kingdom of Hawaii's original ownership of both the Malulani Parcel and the Kaupo Parcel could not, as a matter of law, satisfy the "unity of ownership" requirement for implying an easement. Additionally, the circuit court concluded that Malulani's claims were barred by the statute of limitations set forth in Hawaii Revised Statutes (HRS) § 657-31 (1993).

In its points of error raised on appeal, Malulani contends that the circuit court erred by: 1) granting summary judgment to Kaupo Ranch based on the court's conclusion that the Kingdom of Hawaii's common initial ownership of the properties could not, as a matter of law, satisfy the unity of ownership requirement for the implied easement claims; 2) concluding that the utility easement claim fails as a matter of law because it derives from Malulani's implied easement claims; 3) concluding that Kaupo Ranch was entitled to summary judgment on the additional basis that the statute of limitations in HRS § 657-31 barred Malulani's claims; 4) finding that Kaupo Ranch is the current owner of an undivided interest in the Kaupo Parcel; 5) entering the April 16, 2010 Final Judgment; and 6) awarding costs to Kaupo Ranch.

We hold that, under the circumstances of this case, the Kingdom of Hawaii's prior ownership of both the Malulani Parcel and the Kaupo Parcel satisfies the unity of ownership requirement for an implied easement claim. Further, we hold that the statute of limitations set forth in HRS § 657-31 does not apply to an implied easement claim and thus does not bar the claims in this case. Summary judgment and the costs awarded in favor of Kaupo Ranch were not warranted, and the case is remanded.

## II. Standards of Review

### A. Summary Judgment

"On appeal, the grant or denial of summary judgment is reviewed de novo." *First Ins. Co. of Hawai'i v. A & B Props., Inc.*, 126 Hawai'i 406, 413, 271 P.3d 1165, 1172 (2012) (citing *Nuuanu Valley Ass'n v. City & Cnty. of Honolulu*, 119 Hawai'i 90, 96, 194 P.3d 531, 537 (2008)). Furthermore,

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* at 413-14, 271 P.3d at 1172-73 (citation omitted).

*Ralston v. Yim*, 129 Hawai'i 46, 55-56, 292 P.3d 1276, 1285-86 (2013).

### B. Award of Costs

We review an award of costs under the abuse of discretion standard. *Pulawa v. GTE Hawaiian Tel.*, 112 Hawai'i 3, 10-11, 143 P.3d 1205, 1212-13 (2006).

## III. Discussion

### A. Implied Easements

#### 1. Requirements Under Hawai'i Law

Hawai'i courts have long recognized the principle that easements can be implied, depending on the circumstances of the case. *See AOAO of Wailea Elua v. Wailea Resort Co.*, 100 Hawai'i 97, 100, 105-07, 58 P.3d 608, 611, 616-18 (2002) (holding that an implied easement existed for a drainage system); *Neary v. Martin*, 57 Haw. 577, 582-83, 561 P.2d 1281, 1284-85 (1977) (holding there was no implied easement for access where the trial court found that the parties to the conveyance severing the subject properties intended the conveyance to be free and clear of the alleged easement); *Tanaka v. Mitsunaga*, 43 Haw. 119, 124-25 (Haw. Terr. 1959) (holding there was no implied easement for a right of

4

way where the trial court findings supported the conclusion that the prior owner of both parcels did not intend to convey an easement); *Stibbard v. Rego*, 38 Haw. 84, 94 (Haw. Terr. 1948) (holding there was an implied easement for use of a driveway where the previous owner of the subject properties had conveyed parcels to her children containing the driveway and had continued using the driveway thereafter to access a retained parcel); *Kalaukoa v. Keawe*, 9 Haw. 191, 194 (Haw. Prov. Gov. 1893) (recognizing a "way of necessity" created by implied grant and holding that the width of the way was the same as was used for many years prior to the conveyance that impliedly granted the way); *Henmi Apartments, Inc. v. Sawyer*, 3 Haw. App. 555, 559-61, 655 P.2d 881, 885-86 (1982) (recognizing implied easements for pedestrian and utility purposes).

A key requirement to imply an easement is that there must have been a prior *"unity of ownership" of the dominant and servient properties*. The Hawai'i Supreme Court has consistently relied on the following quote from 3 *Powell on Real Property* § 411, to explain the theory underlying an implied easement.

> All implications of easements necessarily involve an original unity of ownership of the parcels which later become the dominant and servient parcels. When A owns Blackacre, it is not possible for A as the owner of the west half of Blackacre to have a true easement with respect to the east half of Blackacre; but it is both possible and frequent to find A using the east half of Blackacre for the service of the west half of Blackacre, as for example, when the east half of Blackacre contains drains, or sewers, or irrigation ditches, or roadways or stairways which increase the usability of the west half of Blackacre. It is then possible to describe A's utilization of one part of Blackacre for the service of another part thereof as a quasi-easement, and to speak of the served part as the quasi-dominant tenement, and of the burdened part as the quasi-servient tenement.
>
> Where such a quasi-easement has existed and the common owner thereafter conveys to another the quasi-dominant tenement, the conveyee is in a position to claim an easement by implication with respect to the unconveyed quasi-servient tenement.

*AOAO of Wailea Elua*, 100 Hawai'i at 105-06, 58 P.3d at 616-17 (emphasis added) (quoting *Neary*, 57 Haw. at 580, 561 P.2d at 1283); *Tanaka*, 43 Haw. at 122-23; *see also* 25 Am. Jur. 2nd *Easements and Licenses* § 19 (2004) ("An implied easement normally

arises only when the land on which the easement is sought was once part of the same parcel that is now landlocked."); Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* § 4:7 (2014); 28A C.J.S. *Easements* § 112 (2008) ("Ways of necessity cannot exist where there was never any unity of ownership of the alleged dominant and servient estates."); 4 Richard R. Powell, *Powell on Real Property* § 34.07[2], at 34-49 (Michael Allen Wolf, ed. 2013) (noting that although there are different theories for an implied easement, "an original unity of ownership of the dominant and servient parcels must be pleaded and proved").[2]

If there was prior unity of ownership of the properties, Hawai'i courts then focus on the *intent of the parties at the time the properties were severed* to determine if an implied easement exists. "Whether an implied easement exists depends on the intent of the parties as shown by all the facts and circumstances under which the conveyance was made." *Henmi*, 3 Haw. App. at 559, 655 P.2d at 885; *see also AOAO of Wailea Elua*, 100 Hawai'i at 106, 58 P.3d at 617 ("The primary factor in determining whether . . . the grantor[] retained an implied easement . . . is the parties' intent at the time [of severance.]"); *Tanaka*, 43 Haw. at 123 ("[T]he basis of an implied easement is the presumption of grant arising from the

---

[2] Although Hawai'i courts have not explicitly discussed the public policy behind implying an easement, *Kellogg v. Garcia*, 125 Cal. Rptr. 2d 817 (Cal. Ct. App. 2002) provides a good explanation that is consistent with Hawai'i law and which underscores why a previous unity of ownership is a requirement:

> A way of necessity is of common-law origin and is supported by the rule of sound public policy that lands should not be rendered unfit for occupancy or successful cultivation. Such a way is the result of the application of the presumption that whenever a party conveys property, he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses. *Thus, the legal basis of a way of necessity is the presumption of a grant arising from the circumstances of the case. This presumption of a grant, however, is one of fact, and whether a grant should be implied depends upon the terms of the deed and the facts in each particular case.*

*Id.* at 823 (emphasis in original, citations and internal quotation marks omitted).

circumstances of the case. Such presumption is one of fact, which may be rebutted."); *Kalaukoa*, 9 Haw. at 192-93 ("The question as to what is granted or reserved is a question of intention to be shown by competent evidence. . . . In the case of an implied grant it is proved by all the circumstances of the case, and especially by the condition of the property at the time of conveyance.").

> As further explained in *AOAO of Wailea Elua*,
>
> [t]hree factors are often used as a means of indicating intent. It is often said that, in order for a previously existing quasi-easement to ripen into an implied easement, the quasi-easement must have been: (1) apparent; (2) permanent; and (3) either (a) "important for the enjoyment of the conveyed quasi-dominant parcel," or (b) "strictly necessary" for the enjoyment of the dominant parcel. . . . [A]lthough the three above-mentioned general "requirements" for the creation of an implied easement will ordinarily constitute the "test" by which courts should ascertain the presence of an implied easement, they are but one method of ascertaining "the presumption of grant arising from the circumstances of the case," *Tanaka*, 43 Haw. at 123, or "the intent of the parties as shown by all the facts and circumstances under which the conveyance was made," *Henmi*, 3 Haw. App. at 559, 655 P.2d at 885.

100 Hawaiʻi at 106 n.8, 58 P.3d at 617 n.8 (original brackets omitted).

There are thus a variety of issues involved in whether an implied easement exists. In light of the circuit court's summary judgment ruling, this appeal reaches only the "unity of ownership" requirement.[3] Even if the unity of ownership

---

[3] Malulani's First Amended Complaint claims access easements "implied by necessity" and "implied by prior use." Based on Malulani's description of these two claims in the First Amended Complaint, the only difference appears to be with regard to the third "test" for intent described in *AOAO of Wailea Elua* -- that is, whether the previously existing quasi-easement was "strictly necessary" or rather, "important for the enjoyment of the conveyed quasi-dominant parcel." 100 Hawaiʻi at 106 n.8, 58 p.3d at 617 n.8. Hawaii's appellate courts have declined to determine whether only a "strictly necessary" easement can be implied, or whether an easement can be implied merely when it is "important for the enjoyment of the conveyed quasi-dominant parcel," as these concepts simply reflect a method of ascertaining "the intent of the parties as shown by all the facts and circumstances under which the conveyance was made[.]" *Id.* (citation and internal quotation marks omitted). This issue was not raised in the summary judgment motion or addressed by the circuit court, and thus it is not before us in this appeal.

Likewise, this appeal does not address Malulani's claim in its First Amended Complaint that an implied access easement would create a general
(continued...)

requirement is met, the other requirements must also be met. "Whether [an implied easement] claim will be effective depends upon the satisfaction of certain tests established by the cases." *Tanaka*, 43 Haw. at 123 (quoting 3 *Powell on Real Property* § 411); *Neary*, 57 Haw. at 580, 561 P.2d at 1283.

### 2. Unity of Ownership by a Governmental Entity

This appeal presents an issue of first impression in Hawai'i, whether the Kingdom of Hawaii's previous ownership of the subject properties can satisfy the *unity of ownership* requirement for an implied easement claim. Under the circumstances of this case, we conclude that it can.

It is undisputed between Malulani and Kaupo Ranch, and the evidence in the record establishes,[4] that the Kingdom of Hawai'i previously had unified ownership of the Malulani Parcel and the Kaupo Parcel. The undisputed evidence shows that title to the Malulani Parcel originally derives from Royal Patent No. 2340 issued in February 1857, in which the Kingdom of Hawai'i granted fee simple title to T.C. Wilmington for $20.25. The evidence also shows that title to the Kaupo Parcel originally derives from another land grant two years later, Royal Patent No. 2577 issued in May 1859, in which the Kingdom of Hawai'i

---

[3]  (...continued)
right-of-way for all reasonable purposes, including easements for utility lines. The parties did not litigate the scope of any claimed easement and the circuit court did not rule on any such issue. Rather, the circuit court granted summary judgment for Kaupo Ranch on all of Malulani's easement claims based on the unity of ownership requirement, as well as on statute of limitations grounds.

[4]  We note that the circuit court made certain "findings of fact" as part of its January 4, 2010 order granting summary judgment to Kaupo Ranch. However, because the circuit court was addressing a summary judgment motion, and did not hold any type of evidentiary hearing, we apply the usual summary judgment principles and are not bound by the circuit court's findings, regardless of whether those findings are challenged on appeal or not. Thus, *inter alia*, we review the circuit court's summary judgment ruling *de novo*, consider whether there are any genuine issues of material fact, and also view the evidence in the light most favorable to the non-moving party. *See Ralston*, 129 Hawai'i at 55-56, 292 P.3d at 1285-86; Hawai'i Rules of Civil Procedure Rule 56. "[I]n reviewing summary judgment decisions, an appellate court steps into the shoes of the trial court and applies the same legal standard as the trial court applied." *Koga Eng'g & Const. Inc. v. State*, 122 Hawai'i 60, 78, 222 P.3d 979, 997 (2010) (citations and original brackets omitted).

granted fee simple title to Pali_Ohule_Wahapuu and Naha Charlotte Harbottle for $118. For purposes of the implied easement claims in this case, we focus on the 1857 conveyance, at which point the properties were severed.

Generally, there is a split of authority whether the "unity of ownership" element for implying an easement can be satisfied by prior government ownership. *See* Bruce & Ely, *supra*, § 4:7, at 4-21 to -22 ("Controversy exists as to whether governmental ownership of both tracts may fulfill the unity-of-title standard."); 4 Powell, *supra* § 34.07[4], at 34-59 ("Special problems concerning easements by necessity are encountered where the only unity of title was the original ownership by the government.").

Some courts have held that an easement *cannot* be implied when the only unity of ownership was held by the government. *See United States v. Rindge*, 208 F. 611, 619 (S.D. Cal 1913); *Bully Hill Copper Mining & Smelting Co. v. Bruson*, 87 P. 237, 238 (Cal. Dist. Ct. App. 1906); *Guess v. Azar*, 57 So. 2d 443, 445 (Fla. 1952); *Backman v. Lawrence*, 210 P.3d 75, 80 (Idaho 2009); *Cont'l Enters., Inc. v. Cain*, 296 N.E.2d 170, 171 (Ind. Ct. App. 1973); *Thomas v. Morgan*, 240 P. 735, 737 (Okla. 1925), *overruled in part on other grounds by Pearson v. Hasty*, 137 P.2d 545 (Okla. 1943); *Pearne v. Coal Creek Mining & Mfg. Co.*, 18 S.W. 402, 404 (Tenn. 1891).

A number of these cases are of older vintage and provide little explanation for the adopted position. *See Bully Hill*, 87 P. 237; *Thomas*, 240 P. 735; *Pearne*, 18 S.W. 402. In *Rindge*, the court expressed a concern about the potential breadth of implying easements based on common ownership going back to the government. 208 F. at 619. More recently, in *Backman*, the Idaho Supreme Court endorsed a similar view that

> [i]t would be ruinous to establish the precedent contended for, since by it every grantee from the earliest history of the State, and those who succeed to his title, would have an implied right of way over all surrounding and adjacent lands held under junior grants, even to the utmost limits of the State.

210 P.3d at 80 (quoting *Guess*, 57 So. 2d at 444-45). The *Backman* court rejected the argument that implied rights would be limited by the requirement of necessity, discounting the argument by simply stating "there would be little reason to have a unity of title element if it could be satisfied by common ownership in the United States." *Id.*

The modern trend, however, appears to take a different view, recognizing that prior ownership by the government *can* serve to meet the unity of ownership requirement, particularly when an easement by necessity is implied *against* the governmental entity or over land which was *held* by the government at the time the properties were severed. *See McFarland v. Kempthorne*, 545 F.3d 1106, 1111 (9th Cir. 2008); *Kinscherff v. United States*, 586 F.2d 159, 161 (10th Cir. 1978); *United States v. Dunn*, 478 F.2d 443, 444 n.2 (9th Cir. 1973); *Fitzgerald v. United* States, 932 F. Supp. 1195, 1202 (D. Ariz. 1996); *Mont. Wilderness Ass'n v. U.S. Forest Serv.*, 496 F. Supp. 880, 885-86 (D. Mont. 1980); *Kellogg v. Garcia*, 125 Cal. Rptr. 2d 817, 826 (Cal. Ct. App. 2002); *Moores v. Walsh*, 45 Cal. Rptr. 2d 389, 391 (Cal. Ct. App. 1995).[5]

One of the primary cases that Malulani relies upon is *Kellogg*, whereas Kaupo Ranch contends that *Kellogg* has limited value and should have no application to this case. In *Kellogg*, the Kelloggs filed a quiet title action claiming *inter alia* an implied easement for access over neighboring property owned by the Garcias. 125 Cal. Rptr. 2d at 820-21. The federal government had originally held unity of ownership, but in 1878 conveyed the property that the Kelloggs eventually came to own and retained the property that the Garcias eventually came to own. *Id.* At the time of severance, the conveyed property was surrounded by the property retained by the federal government. *Id.* at 820. The trial court relied on *Bully Hill* and ruled that

---

[5] The Restatement (Third) of Property § 2.15 cmt. c (2000) states that "[s]ervitudes by necessity arise on conveyances by governmental bodies as well as by other grantors." *See also Kitras v. Town of Acquinnah*, 833 N.E.2d 157, 164 n.5 (Mass. App. Ct. 2005) (adopting the Restatement's approach and stating "[t]here appears no compelling modern reason here to distinguish between governmental and private grantors, and we adopt the Restatement's approach").

the unity of ownership requirement had not been met because the original owner of the properties was the federal government. 125 Cal. Rptr. 2d at 824.

On appeal in *Kellogg*, the California Court of Appeal, Third District, reversed and held that unity of ownership could be established by the federal government's prior ownership of the properties. 125 Cal. Rptr. 2d at 825-26, 829. The court noted that *Bully Hill* was "in conflict with the current trend in the law" as well as the then-recent decision in *Moores*, which had been decided by another California appellate court, the California Court of Appeal, First District.[6] *Id.* at 825. The *Kellogg* court further pointed to commentators who had expressed the view that allowing government ownership to satisfy the unity of ownership requirement is consistent with underlying theories for the "easement-of-necessity concept." *Id.* at 825-26. That is, "[i]t furthers the public policy of promoting productive use of land and also is in harmony with the presumption that the parties intended to grant or to reserve an easement to benefit the landlocked parcel." *Id.* (citing to Bruce & Ely, *The Law of Easements and Licenses in Land* § 4:7 (2001); 4 *Powell on Real Property* § 34.07[4] (2001); Tiffany, *The Law of Real Property* § 793 (3d ed. 1939)).[7]

Kaupo Ranch argues that *Kellogg* is undermined by *Murphy v. Burch*, 205 P.3d 289 (Cal. 2009), a later decision by the California Supreme Court, and that Malulani's reliance on *Kellogg*

---

[6] In *Moores*, the properties involved were once jointly owned by the federal government. 45 Cal. Rptr. 2d at 390. The California Court of Appeal, First District, rejected the argument that "common ownership must be by other than the federal government" to satisfy the unity of ownership requirement and instead recognized that "[a]n easement by necessity may exist across lands owned by the federal government." *Id.* at 391 n.1. The court ultimately held, however, that the claimed easement by necessity, for access to the landlocked parcel, had been extinguished because the necessity requirement could no longer be met. *Id.* at 391-92.

[7] As noted earlier, and similar to Hawai'i case law, *Kellogg* also recognizes that the presumption of a grant "is one of fact, and whether a grant should be implied depends upon the terms of the deed and the facts in each particular case." 125 Cal. Rptr. 2d at 823 (emphasis, citations and internal quotation mark omitted).

is misplaced. We disagree with Kaupo Ranch. Rather, as Malulani contends, *Murphy* does not establish a bright line rule that government ownership can never satisfy the unity of ownership requirement. Moreover, and importantly, *Murphy* distinguished *Kellogg* based on the differing circumstances in those cases. This case is similar to *Kellogg*.

In *Murphy*, the plaintiff Murphy and the defendants Burches sought to quiet title as to whether an implied easement existed over the Burches' property to benefit Murphy's property. 205 P.3d at 291. Both properties were originally owned by the federal government. When the federal government severed the properties, it conveyed the quasi-servient parcel (that the Burches eventually owned) to various private owners, and retained the quasi-dominant parcel (that Murphy eventually owned). *Id.* at 292. Because there was no express easement over the conveyed quasi-servient parcel, the question in *Murphy* was whether the federal government had impliedly *reserved* an access easement by necessity over the quasi-servient parcel it had conveyed. *Id.*

The California Supreme Court noted that "[i]n contrast to private party conveyances, . . . conveyances involving a sovereign as the common owner typically do not give rise to implied *reservations* of easements or other property interests in conveyed land." *Murphy*, 205 P.3d at 294 (italics in original, underline emphasis added). The court explained that the considerations for this result include that "a number of courts express reluctance to interfere with the certainty and predictability of land titles conferred by a sovereign without any express reservation of rights[;]" that "some courts warn that the common-ownership requirement would be meaningless unless stronger showings are required for implying an easement by necessity in cases tracing back to [government] patents[;]" and that "some courts recognize that strict necessity does not exist in the case of the sovereign as in the case of the private landowner, because the sovereign can exercise the power of

eminent domain to obtain any and all reasonable rights-of-way."
*Id.*

The California Supreme Court thus adopted the following approach:

> [A]lthough we need not and do not presently impose a categorical bar to all easement-by-necessity claims tracing common ownership to the federal government, we hold that the special considerations above must inform the determination whether such an easement arises by implication. This means that, consistent with existing California common law, an easement by necessity may arise by implication based on the inferred intent of the parties to the property conveyance, as determined from the terms of the relevant instrument and the circumstances surrounding the transaction. Strict necessity and common ownership remain required showings, but when a claimant traces common ownership back to the federal government and seeks to establish an implied reservation of an access right-of-way, the intent of Congress is paramount and the government's power of eminent domain also bears significance. Given the unique historical and legal nature of land patents, extreme caution must be exercised in determining whether the circumstances surrounding a government land grant are sufficient to overcome the inference prompted by the omission of an express reference to a reserved right of access. In such cases, the easement claimant bears the burden of producing evidence on the issues regarding the government's intent to reserve an easement and the government's lack of power to condemn.

Id. at 295-96 (emphasis added, internal citations omitted).
Under *Murphy*, therefore, unity of ownership by the government does not *per se* bar the possibility of an implied easement, but special considerations apply to establish an implied *reservation* of an easement by the government.

Significantly, the *Murphy* court addressed *Kellogg* and distinguished it, stating:

> Unlike the situation here, *Kellogg* . . . did not concern a claim of an implied *reservation*. Rather, the plaintiffs in *Kellogg* sought to establish that when the federal government made a grant of landlocked property, the government also impliedly granted a right of access for that property over the land it retained. Because exercise of the government's power of eminent domain could have had no effect on access to the conveyed landlocked property, it is hardly surprising that *Kellogg* made no attempt to distinguish the authorities holding that such power negates the element of strict necessity when an implied reservation claim is at issue. As one treatise observes, where the government is identified as the common grantor, "an easement of necessity may be created *against* the government, but the government agency cannot establish an easement by necessity over land it has conveyed because its power of eminent domain removes the strict necessity required for the creation of an easement by necessity."

205 P.3d at 297 (italics in original, underline emphasis added, internal citations omitted). Thus, *Murphy* did not overrule nor call into question the holdings in *Kellogg* or *Moores*. Rather, *Murphy* recognized that *Kellogg* addressed a different circumstance, *i.e.* in *Kellogg*, at the time of severance, the government had conveyed the quasi-dominant parcel which would benefit from the claimed easement, while retaining the quasi-servient parcel over which the easement was to be implied, and thus the government's eminent domain powers were irrelevant and the question was whether there was an implied *grant* of an easement by the federal government.

The instant case between Malulani and Kaupo Ranch is similar to *Kellogg*. The Kingdom of Hawai'i had original unified ownership of both the Malulani Parcel and the Kaupo Parcel. The parcels were severed in February 1857, when the Kingdom of Hawai'i conveyed the Malulani Parcel to T.C. Wilmington under Royal Patent No. 2340 and retained the Kaupo Parcel, which allegedly surrounded the Malulani Parcel. Thus, at the time the properties were severed, the Kingdom of Hawai'i conveyed the quasi-dominant property which would benefit from the claimed easement and retained the quasi-servient property over which the easement is claimed. The ultimate question then is whether it can be implied that the Kingdom of Hawai'i intended to *grant* an easement in favor of the conveyed property over the Kingdom's retained property. In this circumstance, any eminent domain powers held by the Kingdom of Hawai'i would not affect the "necessity" requirement because the private party grantee, and not the Kingdom of Hawai'i, was allegedly in need of the easement at the time of severance.

We conclude that the modern trend is most consistent with Hawai'i law. Therefore, we hold that the "unity of ownership" requirement for implying an easement *can* be satisfied by prior government ownership of the parcels when the question is whether the government impliedly *granted* an easement, *i.e.* at the time of severance, the government conveyed the quasi-dominant

14

parcel which would benefit from the claimed easement and retained the quasi-servient parcel over which the implied easement is claimed.[8] Because this case involves the question whether the Kingdom of Hawai'i impliedly *granted* an access easement over the Kaupo Parcel that it retained at the time of severance, the circuit court erred in granting summary judgment for Kaupo Ranch based on its view that the Kingdom of Hawaii's prior ownership could not, as a matter of law, satisfy the unity of ownership requirement.

The circuit court also granted summary judgment on Malulani's utility easement claim as a consequence of its ruling on the unity of ownership issue. On that basis, summary judgment was not warranted.

Having addressed the unity of ownership issue, it remains to be seen whether, on remand, the other requirements for the claimed implied easements can be met.[9]

B. **Statute of Limitations**

Kaupo Ranch also based its summary judgment motion on the assertion that Malulani's claims were barred by the statute of limitations in HRS § 657-31. Malulani did not oppose this part of the motion in its opposition memorandum, but did argue at the summary judgment hearing that the statute of limitations did not apply to the claims asserted in this case. The circuit court appears to have ruled that, because Malulani did not oppose the statute of limitations argument in its opposition memorandum,

---

[8] We do not reach the issue addressed in *Murphy*, whether government ownership can satisfy the "unity of ownership" requirement when the claim is that the government impliedly *reserved* an easement, *i.e.* at the time of severance the government conveyed the quasi-servient parcel over which an implied easement is claimed and retained the quasi-dominant parcel which would benefit from the claimed easement.

[9] It appears from the record that, in opposing Kaupo Ranch's motion for summary judgment, Malulani filed a combined opposition and cross-motion for summary judgment. On appeal, Malulani requests not only that summary judgment for Kaupo Ranch be vacated, but also that this court grant summary judgment in favor of Malulani. Malulani's cross-motion for summary judgment was not expressly adjudicated by the circuit court, but in any event the record at this juncture does not contain evidence to support summary judgment for Malulani given the further requirements for an implied easement.

summary judgment was also proper based on the statute of limitations in HRS § 657-31.[10] Malulani challenges this ruling and we conclude the ruling was in error.

Malulani's failure to oppose the statute of limitations argument in its opposition memorandum was not fatal in this case. Malulani did argue at the hearing that the statute of limitations did not apply. Moreover, as the summary judgment movant, Kaupo Ranch had the initial burden to establish that

> no genuine issue of material fact exist[ed] with respect to the essential elements of the claim and that, based on the undisputed facts, [it was] entitled to judgment as a matter of law. Only once the moving party has satisfied its initial burden of production does the burden shift to the non-moving party to show specific facts that present a genuine issue for trial.

*Gurrobat v. HTH Corp.*, SCAP-12-0000764, 2014 WL 714693, at *12 (Haw. Feb. 25, 2014) (emphasis added, internal citation omitted) (citing *First Ins. Co. of Hawaiʻi v. Sariaslani*, 80 Hawaiʻi 491, 493, 911 P.2d 126, 128 (App. 1996)). Here, Kaupo Ranch did not carry its initial burden to show that it was entitled to summary judgment as a matter of law on statute of limitations grounds. Indeed, as argued by Malulani at the hearing, the statute of limitations in HRS § 657-31 does not apply to the implied easement claims asserted in this case.

HRS § 657-31 provides that "[n]o person shall commence an action to recover possession of any lands, or make any entry thereon, unless within twenty years after the right to bring the action first accrued." (Emphasis added). "An easement is a

---

[10] The circuit court's relevant conclusion of law states:

> 3. The Court concludes that under the circumstances presented by this case and the undisputed facts noted above and, notwithstanding Malulani's counsel's arguments made on the record at the hearing on December 16, 2009, based on Malulani's lack of opposition to Kaupo Ranch's Motion for Summary Judgment on the grounds that . . . the Complaint was filed after the expiration of the applicable statute of limitations as set forth in HRS Section 657-31 and its predecessor statutes that judgment, as a matter of law, should be entered in favor of Kaupo Ranch on all three causes of action set forth in the Complaint.

nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement." *Marvin M. Brandt Revocable Trust v. United States*, 134 S. Ct. 1257, 1265 (2014) (emphasis added, internal quotation marks omitted) (quoting Restatement (Third) of Property § 1.2(1) (1998)); *see also Nihoa v. Chow*, 57 Haw. 172, 173 n.2, 552 P.2d 77, 79 n.2 (1976) (noting that easements are "interests in land, albeit incorporeal, nonpossessory interests") (emphasis added). Furthermore, as explained in *Sylva v. Wailuku Sugar Co.*, 19 Haw. 681 (Haw. Terr. 1909), the term "entry" as used in a predecessor statute to HRS § 657-31 is based on the common law meaning of the word, which "was the extrajudicial remedy for the wrong done by ousting the owner of the freehold, whether by abatement, intrusion or disseizin and applies only in cases 'when another person who hath no right hath previously taken possession of lands or tenements.'" *Id.* at 682 (quoting 3 William Blackstone, *Commentaries*, 168, 174). Thus, HRS § 657-31 addresses recovery of possession of land and does not apply to claims seeking to imply an easement on another's land.

HRS § 657-33 (1993) sets forth when an action accrues under HRS § 657-31 and further illustrates that implied easements are not subject to the statute of limitations in HRS § 657-31. HRS § 657-33 states:

> §657-33 Action accrues when. In the construction of this part, the right to make an entry or commence an action, shall be deemed to have first accrued at the following times:
> (1) When any person is disseised, his right of entry or action shall be deemed to have accrued at the time of the disseisin.
> (2) When he claims as heir or devisee of one who died seised, his right shall be deemed to have accrued at the time of the death, unless there is an estate by the curtesy or in dower, or some other estate intervening after the death of such ancestor or devisor, in which case his right shall be deemed to have accrued when the intermediate estate shall expire, or when it would have expired by its own limitation.
> (3) Where there is such an intermediate estate, and in all other cases, where a party claims in remainder, or reversion, his right so far as it is affected by the limitation herein prescribed,

17

shall be deemed to accrue when the intermediate or precedent estate would have expired by its own limitation, notwithstanding any forfeiture thereof, for which he might have entered at an earlier time.

(4) Paragraph (3) shall not prevent any person from entering, when entitled to do so, by reason of any forfeiture or breach of condition, but if he claims under such a title, his right shall be deemed to have accrued when the forfeiture was incurred or condition broken.

(5) In the cases not otherwise specially provided for, the right shall be deemed to have accrued when the claimant, or the person under whom he claims, first became entitled to the possession of the premises under the title upon which the entry or action is founded.

(Emphasis added).[11] Nothing in HRS § 657-33 is applicable to a claim for an implied easement, which is a nonpossessory interest.

Kaupo Ranch points to several cases addressing prescriptive easements to argue that the statute of limitations under HRS § 657-31 applies to easements generally.[12] However, the cited cases are distinguishable because, under Hawaiʻi law, "the same elements necessary to prove acquisition of title by adverse possession are required to establish an easement by prescription." *The Nature Conservancy v. Nakila*, 4 Haw. App. 584, 598, 671 P.2d 1025, 1035 (1983). In short, because a prescriptive easement must be proved by elements similar to an adverse possession claim, the same statute of limitations applies to both such claims. In this case, however, Kaupo Ranch is not claiming a prescriptive easement and the twenty year limitations period in HRS § 657-31 is inapplicable.

Beyond the express terms of HRS § 657-31 and our interpretation of that statute, we further note that statutes of limitations generally do not apply to bar a claim for an implied easement by necessity. *See* 11 Am. Jur. Proof of Facts 3d, at 630

---

[11] The term "disseise" means "[t]o wrongfully deprive (a person) of the freehold possession of property." *Black's Law Dictionary*, 541 (9th ed. 2009).

[12] Kaupo Ranch cites to: *Lalakea v. Hawaiian Irrigation Co.*, 36 Haw. 692, 706 (Haw. Terr. 1944); *Kalaukoa v. Keawe*, 9 Haw. 191 (Haw. Prov. Gov. 1893); *The Nature Conservancy v. Nakila*, 4 Haw. App. 584, 600, 671 P.2d 1025, 1036 (1983); and *Ryan v. Tanabe Corp.*, 97 Hawaiʻi 305, 37 P.3d 554 (App. 1999). These cases are inapposite.

(1991) ("No statute of limitations is applicable to preclude an action for a way of necessity."); *Kellogg*, 125 Cal. Rptr. 2d at 823 (stating that "a way of necessity, having been created by the necessity for its use, cannot be extinguished so long as the necessity exists" and that the statute of limitations for quiet title actions did not apply to an easement of necessity (citation and brackets omitted)).

Because Kaupo Ranch did not meet its initial burden to show that it was entitled to summary judgment as a matter of law under HRS § 657-31, the circuit court erred in granting summary judgment on this basis.

C.   **Finding of Fact 2**

Malulani challenges finding of fact (FOF) 2, which states in relevant part that: "Kaupo Ranch is the current owner of an undivided interest of land located in Kaupo, Hana, Maui, Hawaii being Royal Patent Grant No. 2577 to Pali, Ohule, Wahapuu and Naha Charlotte Harbottle granted to Pali, Ohule, Wahapuu and Naha Charlotte Harbottle by the Kingdom of Hawaii in 1859[.]" Malulani argues that there is no evidence in the record to support FOF 2, and that the record shows that there are many potential owners of the Kaupo Parcel.

Malulani's claims were adjudicated by summary judgment and thus FOF 2 is not based on a trial or an evidentiary hearing. Because we have concluded that the summary judgment ruling was not warranted, the case will be remanded to the circuit court and the circuit court's findings in its January 4, 2010 order, including FOF 2, are subject to further litigation in the case.

As noted by Kaupo Ranch, FOF 2 appears to be based on Malulani's pleadings and arguments related to its implied easement claims. Kaupo Ranch did not dispute the assertion that it has an interest in the Kaupo Parcel and the circuit court appears to have based FOF 2 on the lack of dispute between these parties. Neither party suggests that there is any evidence in the record regarding Kaupo Ranch's specific interest in the Kaupo Parcel. Thus, FOF 2 is not binding on Malulani or Kaupo Ranch

going forward, nor is it binding on any other party named in the complaints in this case.

### D. Costs Granted to Kaupo Ranch

The circuit court awarded Kaupo Ranch costs as the prevailing party. Because we have concluded that Kaupo Ranch was not entitled to summary judgment, Kaupo Ranch is no longer the prevailing party and the award of costs is likewise vacated.

### IV. Conclusion

For the foregoing reasons, we vacate the April 16, 2010 Final Judgment, the January 4, 2010 "Findings of Fact and Conclusions of Law and Order Partially Granting And Partially Denying Defendant Kaupo Ranch, [Ltd.'s] Motion for Summary Judgment And Request For Attorney's Fees and Costs," and the March 24, 2010 order awarding costs to Kaupo Ranch, entered by the Circuit Court of the Second Circuit. We remand this case to the circuit court for further proceedings consistent with this opinion.

On the briefs:

Gregory J. Garneau
(Kiefer & Garneau LLC)
for Plaintiff-Appellant
The Malulani Group, Limited

Brian R. Jenkins
(Jenkins & Jenkins)
for Defendant-Appellee
Kaupo Ranch, Ltd.